## McLAUGHLIN v. McLAUGHLIN, WARD & CO.

1. CORPORATIONS—TRANSFER OF STOCK—LACHES.

    Transfer of shares of stock, held in treasury of corporation of which purchaser was secretary, treasurer and director, from purchaser to another director who had hitherto owned one-half of the shares issued upon incorporation of pre-existing partnership *held*. legal, in the absence of restrictions, conditions or limitations in articles or by-laws; and where resolution, pursuant to which such shares were issued, was signed by holders of over 80 per cent. of the stock then issued and outstanding and authorized the sale to such purchaser ''or to whomsoever he may direct accordingly;'' and minority stockholders made no complaint for many years after knowledge of the transfer.

2. ESTOPPEL—PARTY WHO STANDS BY AND SEES HIS RIGHTS INVADED WITHOUT OBJECTION MAY NOT SUBSEQUENTLY COMPLAIN.

    A party who, having a right to property, sees another dealing with it inconsistent with that right and stands by without making objection while such acts are in progress, may not subsequently complain.

3. CORPORATIONS—ACCOUNTING—MINORITY STOCKHOLDERS—ESTOPPEL—PROFITS.

    In minority stockholders' suit for accounting between bean elevator corporation and subsidiary elevator corporations in bean-producing territory, plaintiffs *held*, not entitled to question general manager's authority after they had accepted profits from such branches for many years and knew or had means of knowing the branches were operated for the use and benefit of the company.

4. SAME—ATTORNEY FEES—MINORITY STOCKHOLDERS.

    Allowance of $500 attorney fee to attorneys for minority stockholders on theory they had recovered some $11,000 for the corporation from an insurance policy *held*, reasonable.

Appeal from Jackson; Simpson (John), J. Sub-
mitted June 2, 1936. (Docket No. 30, Calendar No.
38,768.) Decided October 6, 1936.

Bill by Miar J. McLaughlin and others, minority
stockholders, against McLaughlin, Ward & Com-
pany, a Michigan corporation, and others for ac-
counting, transfer of certain stock to the corpora-
tion or its receiver, assignment of rights in life in-
surance policy, and for other relief. Lawrence H.
McLaughlin intervened as party plaintiff. From de-
cree rendered, plaintiffs and intervening plaintiff
appeal. Affirmed.

*Bisbee, McKone, Wilson, King & Kendall,* for
plaintiffs.

*M. Grove Hatch* and *Whiting & Kleinstiver,* for
defendants.

Sharpe, J. This is a chancery suit by minority
stockholders seeking relief relating to the issuance
of 300 shares of stock to L. W. Maloy as well as an
accounting from the Ward estate relating to other
business transactions.

About the year 1890, Dr. Miar McLaughlin and
Russell E. Ward formed a business copartnership
in the city of Jackson, the purpose of which was to
deal in beans, grains and feed with R. E. Ward as
the active manager. Dr. McLaughlin died in 1908
and after his death a corporation was formed under
the name of McLaughlin, Ward & Company with an
authorized capital of $50,000 divided into 5,000
shares of common stock with a par value of $10 each.
The partnership assets were transferred to it; 3,700
shares of stock were issued to the following persons:

Emma A. McLaughlin, 943-3/4; Lawrence J. Mc-Laughlin, 302-1/12; Mabelle C. Maino, 302-1/12; Lydia M. Palmer, 302-1/12; and R. E. Ward, 1,850;

The by-laws of the corporation contained the following:

"Article 1.

* * *

"Sec. 2. Special meetings of the stockholders may be called at any time by the president, and it shall be the duty of such officer to call a special meeting whenever requested so to do by writing signed by stockholders representing one-third of the capital stock of the company. Notice of every special meeting shall be in writing and shall state the time and place and object thereof and shall be given by serving such notice personally or mailing the same postage prepaid at least three days before such meeting to each stockholder at his post office address as the same appears on the books of the corporation.

* * *

"Article 2.

"Section 1. The directors of this corporation shall consist of four members and be elected by ballot, for the term of one year, at the annual meeting of the stockholders.

"Sec. 2. Vacancies in the board of directors, occurring during the year, shall be filled by the stockholders at a meeting called for that purpose.

"Sec. 3. The board of directors may adopt such rules and regulations for the conduct of their meetings and management of the affairs of the corporation as they deem proper, not inconsistent with the laws of the State of Michigan or these by-laws.

"Sec. 4. Meetings of the board may be called by the president at any time, upon 24 hours' notice in writing to each director. On the written request of any director the president shall call a special meeting of the board. At such meeting a majority shall constitute a quorum for the transaction of business.

"Article 3.

\*     \*     \*

"Sec. 6. The general manager of the corporation shall have general charge and supervision and management of all the affairs of the corporation, including buying and selling, borrowing money, keeping the books of account, the depositing of its funds, signing of checks and such other matters as may be necessary in carrying on the business of the corporation."

At the first stockholders' meeting held July 16, 1908, the following directors were elected: Russell E. Ward, Emma A. McLaughlin, Lydia M. Palmer, and L. W. Maloy. In 1909 the same board was reelected except that M. C. Maino was elected a director in place of L. M. Palmer and in 1910 the same board was elected with the exception that M. J. McLaughlin took the place of M. C. Maino. The personnel of the board remained constant until 1928 when Maloy resigned, except that during the years 1917, 1918, Maino acted in place of M. J. McLaughlin. From 1928 to 1933 the board consisted of the three remaining members.

In 1907, L. W. Maloy came into the employ of the company, participated in its organization and was elected a director as well as secretary and treasurer and so continued until 1928. He desired to purchase stock in the company and on June 12, 1916, was given the opportunity through the following resolution:

"Whereas, There is in the treasury of the corporation 1,300 shares of the capital stock, of which L. W. Maloy is desirous of purchasing 300 shares, and is willing to pay therefor $15 per share, which amounts to $4,500; and it being deemed for the best interests of the corporation that said 300 shares of

said stock be sold to said Maloy, at the price so offered;

"Therefore, resolved, That the proposition of said Maloy, for the purchase of 300 shares of the capital stock of the corporation, be and is hereby accepted and the president and secretary are hereby authorized and directed to issue certificate or certificates for such stock to said Maloy, or to whomsoever he may direct accordingly.

"And be it further resolved, That, for the purpose of enabling said Maloy to purchase said stock, in case he is unable to pay any part of the purchase price, that the president of the corporation be and he is hereby authorized and directed to loan to said Maloy the whole or any part of said sum of $4,500, as said Maloy may desire, taking as evidence of the indebtedness so incurred, the promissory note of said Maloy, payable on demand with interest at 6 per cent. per annum, payable annually, said note to be secured by an assignment of the stock so sold, or such part thereof as, in the judgment of the president, is sufficient for the security of said promissory note, the dividends accruing and payable on the stock as assigned, to be applied, First, in the payment of the interest as it becomes due and payable on said note; and Second, upon the principal thereof."

Two hundred shares of this stock were paid for in cash June 13, 1916, and shortly thereafter this stock was transferred to Russell E. Ward, while the 100 shares issued to Maloy were paid for by note and in 1928 were assigned to Ward upon the resignation of Maloy. Prior to 1916, all corporate statements and reports showed capital stock of $37,000 and from 1916 to 1928 the reports showed a capital stock of $40,000 or 4,000 shares at $10 each.

In July, 1928, Ward and associates organized the Shepherd Grain & Bean Company with a capital

stock of $10,000 consisting of 1,000 shares of the par value of $10 per share. These shares were subscribed and paid for as follows:

Russell E. Ward...............510 shares    $5,100
Russell E. Ward, Trustee for
  McLaughlin, Ward & Co......100 shares    $1,000
Ward E. King................130 shares    $1,300
Brown T. Craig...............130 shares    $1,300
William E. Savage............130 shares    $1,300

Later in 1928 and in 1929, Russell E. Ward purchased the shares of King, Craig, and Savage and thus became the owner of 900 shares of stock. This corporation was operated as a branch of McLaughlin, Ward & Company; its manager made daily reports to McLaughlin, Ward & Company; it consulted with the parent company relative to sales giving the latter first choice on all of its produce; it shipped as directed by the latter company; it paid no dividends to its stockholders and the parent company made whatever profit was derived from its operations. In December, 1933, it had a going concern value of $27,484 exclusive of real estate while its obligations to the parent company as of October 28, 1933, amounted to $23,493.38 and $21,487.30 as of March 23, 1934.

The Central Elevator Company was acquired by Ward in 1916 and 1917 and was operated in a manner similar to the Shepherd Grain & Bean Company except that Ward was its sole owner. Following Mr. Ward's death and on October 13, 1933, a meeting of the stockholders of the McLaughlin, Ward & Company was held at which time directors favorable to the Ward interests were elected.

Plaintiffs as minority stockholders seek to have cancelled the 300 shares of stock issued to Maloy

and later transferred and assigned to Russell E. Ward and to have an accounting of the business transactions between Ward and the Shepherd Grain & Bean Company and the Central Elevator Company.

The trial court after hearing the evidence found as a fact that there was no collusion or bad faith between L. W. Maloy and Russell E. Ward in the assignment of stock issued to Maloy; that while there was no meeting of the stockholders of McLaughlin, Ward & Company authorizing the incorporation of, or investment of funds in, the Shepherd Grain & Bean Company yet this company was operated as a branch house of McLaughlin, Ward & Company; that no dividends were ever paid to the stockholders of the Shepherd company; that on March 23, 1934, its obligations to the McLaughlin company were $21,487.30; that the value of its property exclusive of the real estate amounted to $27,484.84; that Mr. Ward's actions in connection with this company were in good faith and for the benefit of the McLaughlin, Ward & Company; and that no relief should be granted plaintiffs.

The court also found that the Central Elevator Company at Byron was acquired by Mr. Ward in 1917 and was operated as a branch house of McLaughlin, Ward & Company. Its entire stock was owned by Mr. Ward and its operation was beneficial to McLaughlin, Ward & Company.

The lower court found that McLaughlin, Ward & Company was entitled to recover on an insurance policy on Russell E. Ward's life. However, since the findings of the trial court have been handed down the parties have stipulated to the payment of this insurance and defendants have waived their right of appeal therefrom. The trial court also

allowed plaintiffs' attorneys the sum of $500 as attorney fees upon the theory that the attorneys had been diligent and had succeeded in recovering $11,000 upon the insurance policy involved in this action.

The first question involved in plaintiffs' appeal is the court's finding that the transfer of 300 shares of the capital stock of the company from Maloy to Ward was a legal transfer of the stock. In the articles of incorporation and the by-laws of the McLaughlin, Ward & Company, we find that there are no restrictions, conditions, or limitations of any kind upon the issuance or transfer of stock or the right of stockholders to sell, pledge, or assign such shares of stock to whomsoever they may choose, nor is there any limitation upon the number of shares of stock that any one stockholder may own or hold. In this cause the additional stock was issued and the price fixed pursuant to a resolution signed by holders of over 80 per cent. of the stock issued and outstanding and in our opinion the resolution authorizing its sale to Maloy, *or to whomsoever he may direct accordingly* was sufficient to legally authorize transfer of such stock. We are unable to find in this record anything to indicate that Ward overreached in any way in securing this stock. This conclusion is fortified by the fact that for many years plaintiffs knew that Ward owned or controlled this stock, and yet did nothing about it until the present action was brought.

In *Smith* v. *O'Dell*, 240 Mich. 185, respecting a delay of one and one-half years, it is said:

"A party who, having a right to property, sees another dealing with it inconsistent with that right and stands by without making objection while such acts are in progress may not subsequently complain.

*Truesdail* v. *Ward,* 24 Mich. 117. The overwhelming proofs in this case show such gross negligence and laches on the part of plaintiff in this affair as to divest his claim of any equitable standing against defendant.''

The next serious problem in this cause relates to the actions of Ward as manager of the company. In this connection we must have in mind that when the company was first formed it had its office and elevator in Jackson with beans as its principal stock in trade. Later on the company acquired several elevators in smaller towns as feeders to the main elevator, but, as the co-operative elevator movement progressed among the growers of this crop, it was deemed advisable to dispose of the branch elevators and in later years it became necessary to seek other sources of supply and to establish such sources in bean-producing territory. Consequently, the Central Elevator Company was established at Byron in 1916 and 1917 and the Shepherd Grain & Bean Company at Shepherd in 1928. The record shows that since 1909 the moving spirit of the enterprise was Russell E. Ward and that from 1909 to 1927 more than $140,000 was paid out in cash dividends of which the McLaughlins received $66,230, an average return on their investment of 14 per cent. per year from 1909 to 1934. Moreover, the record shows that from the time of the organization of the Shepherd Grain & Bean Company in 1928 to April, 1934, the parent company handled better than $300,000 gross business from the Shepherd company upon which the parent company made a net profit of more than $12,000.

The business with the Central Elevator Company was also most beneficial to the McLaughlin, Ward & Company returning a profit of $34,674.04 during

the 17 years of its operation and we are satisfied after reading the entire record that the management of Russell E. Ward was for the best interests of the stockholders of the McLaughlin, Ward & Company and that the stockholders knew or had the means of knowing that Ward was operating the two branch houses for the use and benefit of the parent company. They were profitable ventures, in line with the established policy of the company, and the stockholders having accepted the profits from these two branch houses may not now question the authority of their general manager in establishing them.

The only remaining question relates to the allowance of $500 attorney fees to plaintiffs' attorneys. The fees were allowed upon the theory that the attorneys had recovered some $11,000 for the corporation from an insurance policy. The amount allowed was reasonable and should be paid.

The decree of the lower court is affirmed. Defendants may recover costs.

NORTH, C. J., and FEAD, WIEST, BUSHNELL and TOY, JJ., concurred.

BUTZEL, J., concurred in the result.

POTTER, J., did not sit.